IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EMORY RUSSELL; STEVE LYMAN;
GARY KELLEY; LEE MALLOY;
LARRY ROBINSON; GARY HAMILTON;
ART SCHAAP; and GUY SMITH,

    Plaintiffs,

vs.                                                              No. CIV-13-00760 KG/LAM

THE NEW MEXICO INTERSTATE STREAM
COMMISSION; THE NEW MEXICO ENERGY,
MINERALS AND NATURAL RESOURCES
DEPARTMENT, STATE PARKS DIVISION;
ESTEVAN LOPEZ, Individually and in his Official
Capacity as Director of the NEW MEXICO INTERSTATE
STREAM COMMISSION; TOMMY MUTZ, Individually
and in his Official Capacity as Director of the NEW MEXICO
STATE PARKS DIVISION,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants' Motion for Summary Judgment (Motion for Summary Judgment), filed on February 11, 2014.  (Doc. 51).  On April 17, 2014, Plaintiffs filed a response to the Motion for Summary Judgment and on May 12, 2014, Defendants filed a reply.  (Docs. 59 and 66).  On April 21, 2014, Plaintiffs filed a Motion for Summary Judgment and Memorandum Brief in Support Thereof[1] (Cross-Motion for Summary Judgment).  (Doc. 61).  On May 12, 2014, Defendants filed a response to the Cross-Motion for Summary Judgment and on May 28, 2014, Plaintiffs filed a reply.  (Docs. 67 and 71).  Having reviewed Defendants' Motion for Summary Judgment, Plaintiffs' Cross-Motion for Summary

---

[1] In Plaintiffs' Motion for Summary Judgment and Memorandum Brief in Support Thereof (Doc. 61), Plaintiffs state that they intended to file their motion as a Cross-Motion for Summary Judgment, but were prevented from doing so according to CM/ECF Admin. Procedures Manual § 9(f)(2).  The Court, therefore, construes Plaintiffs' motion as a Cross-Motion for Summary Judgment.

Judgment, the accompanying briefs, and the evidence of record, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiffs' Cross-Motion for Summary Judgment.

I.     *The First Amended Complaint (Doc. 4)*

This lawsuit asserts an alleged Fourteenth Amendment procedural due process violation claim brought under 42 U.S.C. § 1983 (Count I), and a breach of contract claim brought under state law (Count II).  Plaintiffs claim that they suffered damages when Defendants unilaterally terminated Plaintiffs' New Mexico Interstate Stream Commission Private Boat Dock License Agreements (License Agreements) on May 10, 2013, and required Plaintiffs to remove their private boat docks (boat docks) from Ute Lake, a state owned reservoir in Quay County, New Mexico.

In Count I, Plaintiffs claim that the License Agreements and their boat docks constitute a property interest, which Defendants deprived without due process of law.  Plaintiffs seek damages and punitive damages against Defendant Estevan Lopez (Lopez), Director of the New Mexico Interstate Stream Commission, and Defendant Tommy Mutz (Mutz), Director of the New Mexico State Parks Division, in their official and individual capacities.  Plaintiffs also seek injunctive relief against all Defendants.  In Count II, Plaintiffs assert that Defendants terminated the License Agreements without just cause.  Plaintiffs claim they are entitled to damages, punitive damages, and injunctive relief for the breach of contract.

Defendants now move for summary judgment on both the Section 1983 claim and the state law claim.  Defendants argue first that Plaintiffs were not entitled to procedural due process because they did not have a constitutionally protected property right in the License Agreements or the boat docks.[2]  Defendants also raise a qualified immunity defense with respect to the

---

[2] It is important to note that in the First Amended Complaint (Doc. 4), Plaintiffs claim that "the boat docks themselves constitute a property interest." (Doc. 4) at 3.  Defendants argue that "Plaintiffs' interests in the boat

Section 1983 claim.  Defendants argue second that if the Court concludes that Plaintiffs' Section 1983 claim fails as a matter of law then Plaintiffs' state law breach of contract claim must also be dismissed.  Alternatively, Defendants assert that if the Court finds a property interest in the License Agreements, then the state law breach of contract claim fails because adequate state law remedies exist to redress an alleged breach.

    Plaintiffs also move for summary judgment on both the Section 1983 claim and the state law claim.  Plaintiffs argue that they are entitled to permanent injunctive relief and damages against Defendants under Count I, because Plaintiffs have a constitutionally protected property right in the License Agreements.  Plaintiffs further contend that they are entitled to summary judgment on Count II, the breach of contract claim because (1) Defendants lacked just cause for the termination of the License Agreements; and (2) Plaintiffs were not allowed an opportunity to cure the reported defects in the boat docks.

II.     *Standard of Review*

    Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the existence of triable issues.  *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is

---

docks are limited to the License Agreements. . . ." (Doc. 51) at 8.  In their briefing, Plaintiffs do not dispute Defendants' contention.  Accordingly, the Court finds that the only issue before the Court in Count I, is whether the License Agreements created a protected property interest.

3

genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891. The Court treats cross-motions for summary judgment separately, inasmuch as the denial of one does not require the Court to grant the other. *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). Moreover, while the Court may assume on cross-motions for summary judgment that no evidence other than that filed by the parties need be considered, summary judgment is nevertheless inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id*. Ordinarily, in order for the law to be clearly established, there must be a United States Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

If the plaintiff successfully carries his two-part burden, the burden then shifts to the defendant. *Id*. At that point, a defendant must show that there are no disputes of material fact

about whether his conduct was objectionably reasonable in light of clearly established law and the information known to the defendant at the time. *Id.* A motion for summary judgment based on qualified immunity, however, is "properly denied," if "the record shows an unresolved dispute of historical fact relevant to" the qualified immunity analysis. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

III.     *Undisputed Material Facts[3]*

Defendant New Mexico Interstate Stream Commission (ISC), a statutorily enacted state agency, is prescribed broad power to do any and all things necessary to protect the water and stream systems of New Mexico, including investigating, developing, conserving, and protecting New Mexico's water supply. NMSA 1978, § 72-14-3 (Repl. Pamp. 1997); *see also* (Doc. 51) at 2. Defendant ISC owns fee simple real property in Quay County, New Mexico, generally known as the Ute Reservoir. (Doc. 51) at 1. Defendant ISC also owns "flowage easements" and other interests in real property in Quay County, New Mexico, that surround and are used in conjunction with the Ute Reservoir. *Id.* Defendant New Mexico Energy, Minerals and Natural Resources Division (EMNRD), also a statutorily created state agency, is vested with the duty to "maintain, manage and supervise all state parks and state-owned or state-leased recreation areas," including the Ute Reservoir. NMSA 1978, § 9-5A-4(F) (Repl. Pamp. 2005); *see also*

---

[3] Unless otherwise noted, the summary of material facts is undisputed. The Court observes that in Plaintiffs' Cross-Motion for Summary Judgment, Plaintiffs provide extensive facts pertaining to prior license agreements and Defendants' course of conduct from 2002 until 2012. In reply, Defendants dispute the majority of the 2002-2012 facts as either incomplete representations or speculation founded on an inadmissible affidavit. (Doc. 67) at 1-5. The Court will not consider the 2002-2012 facts for two reasons. First, Plaintiffs proffer the 2002-2012 facts to support a claim for implied contract based on course of conduct to establish a property interest. As the Court discusses more thoroughly in *Section IV*, the Court interprets Plaintiffs' implied contract claim as an attempt to amend the First Amended Complaint (Doc. 4) and the Court denies that request pursuant to Fed. R. Civ. P. 15(a). Second, while the parties dispute the 2002-2012 facts, those facts are immaterial to the Court's disposition of the Motion and Cross-Motion for Summary Judgment because they have no relation as to whether Plaintiffs possessed a property interest in the License Agreements. *See Phillips v. Calhoun*, 956 F.2d 949, 951-52 (10th Cir. 1992) (immaterial facts are irrelevant to the Court's disposition) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("under materiality requirement of Rule 56(c), '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment'")).

(Doc. 51) at 2.

On September 27, 2010, Defendant ISC approved the Ute Reservoir Shoreline Management Plan, which included provisions regarding boat docks at Ute Reservoir. (Doc. 51-1) at 1. On December 22, 2010, Defendant ISC and Defendant EMNRD entered into a Memorandum of Agreement (MOA), in which Defendant ISC delegated its authority of inspecting boat docks on the Ute Reservoir to Defendant EMNRD. *Id.*; (Doc. 51-2) at 7. The MOA stated that Defendant EMNRD shall inspect the boat docks and require that each boat dock comply with construction and maintenance standards set forth in 18.17.3 NMAC for the term of the license agreements. (Doc. 51-2) at 12; (Doc. 59-1) at 2. For any violations concerning health, safety, or welfare, the boat dock owners must cure "the violations within 30 days of receipt of written notice of the violation." (Doc. 51-2) at 12. For all other violations, the boat dock owner has 90 days to cure from receipt of written notice. *Id.* Lastly, the MOA required that Defendant ISC and Defendant EMNRD work together to take action against a boat dock owner, "including removal of the boat dock, if the boat dock does not or is not able to comply with the" License Agreements, 18.17.3 NMAC, or the Ute Reservoir Shoreline Management Plan. *Id.* In 2011, Jared Langenegger (Langenegger), the Northeast Regional Supervisor for the State Parks Division, assumed responsibility for the inspection of the boat docks at Ute Reservoir pursuant to the MOA. (Doc. 61) at 6; (Doc. 61-2) at 2 (depo. at 6-7).

On or about August 6, 2012, each Plaintiff entered into materially identical License Agreements with Defendant ISC. (Doc. 51) at 1. The License Agreements allowed boat docks on Defendant ISC's property, specifically the Ute Reservoir, for a limited period subject to various terms, covenants, and conditions. *Id.* at 2; (Doc. 51-1). The License Agreements contained the following relevant conditions. Section 1 stated, "[ISC] hereby grants to Licensee a

6

revocable license (the 'License') to maintain the Boat Dock. [ISC] does not grant the Licensee any real property interest in" the Ute Reservoir. (Doc. 51-1) at 2.

Section 2 of the License Agreements set the term of the license from June 1, 2011, to June 1, 2016, "unless [ISC] terminates or revokes the License prior to that date." *Id.* Section 2 also specified two types of termination for the License Agreements: (1) mutual, written consent; and (2) "for cause." *Id.* The "for cause" section stated, in full,

> [a]t any time, if [ISC] upon consultation with [EMNRD], concludes that the Boat Dock poses a threat to the water quality of Ute Reservoir, that the Boat Docks poses a threat to the operation of the Ute Reservoir or Ute Dam, or that Licensee has violated any of the terms, covenants, or conditions of this Agreement, then [ISC] may terminate the License upon thirty (30) days written notice to Licensee, or immediately in the case of emergency. Prior to the termination date of the License, the Licensee agrees to remove the Boat Dock from the [Ute Reservoir] and restore the [Ute Reservoir] as described in Paragraph 15 of this Agreement.

*Id.*

Section 4 of the License Agreements pertained to Defendant EMNRD's inspections of the boat docks, inspection deficiencies, and time to cure the inspection deficiencies. *Id.* at 3. Specifically, that "[i]f [EMNRD] finds that the Boat Dock fails to meet all applicable laws and requirements, the Licensee shall repair the Boat Dock, or remove the Boat Dock and restore the [Ute Reservoir], within the time period specified. . . ." *Id.*

Lastly, Section 10 of the License Agreements set forth Defendant ISC's requirements that the Licensee ensure that the boat dock "be maintained in a safe and secure condition" and "not be a threat to public safety." *Id.* at 5. Further, if Defendant ISC—in its "sole and absolute judgment"—determined that the boat docks violated either requirement, then "the offending Licensee's License shall be terminated and Licensee shall remove the Boat Dock and restore the [Ute Reservoir]." *Id.*

On March 19, 2013, Langenegger completed the 2013 boat dock inspections in

accordance with 18.17.3 NMAC.  (Doc. 51-3) at 1; (Doc. 61) at 7.  The 2013 inspection report documented that the Plaintiffs' boat docks were fully or partially grounded and unusable.  (Doc. 67-1) at 3 (Roepke Aff. ¶ 7).  After a review of the inspection reports, Defendants Mutz and Lopez determined that the grounding of 13 boat docks constituted a safety emergency, which justified the immediate termination of the License Agreements.  (Doc. 61) at 7.

On or about May 10, 2013, each Plaintiff received a letter from Defendant ISC titled, "Emergency at Ute Reservoir Requiring Immediate Termination of License and Removal of Boat Dock."  (Doc. 51-3) at 1; (Doc. 51).  The letter notified Plaintiffs that during the boat dock inspections, Defendant EMNRD noted that Plaintiffs' boat docks were partially or fully breached due to the extremely low water levels at the Ute Reservoir, resulting in grounding and damage to the boat docks.  (Doc. 51-3) at 1.  Defendant ISC also concluded that Plaintiffs' boat docks constituted as a threat to public safety and that Plaintiffs failed to maintain the boat docks in a safe and secure condition—violations of Section 10 of the License Agreements—because grounding weakens the overall structure and may result in structural failure.[4]  *Id.*  Defendant ISC also cited Section 2 of the License Agreements, stating that, "ISC may terminate the License Agreements at any time if the terms or conditions of the License Agreements have been violated."  *Id.* at 2.  Defendant ISC further concluded, relying on Section 10, that immediate termination of the License Agreements and removal of the boat docks was necessary due to safety concerns.  *Id.*  Defendants gave Plaintiffs until July 17, 2013, to remove the boat docks.  *Id.*

On May 31, 2013, Defendants held a meeting with Plaintiffs to address the specifics of the License Agreements terminations and to answer questions.  *Id.* at 7.  In response to Plaintiffs'

---

[4] Plaintiffs dispute the fact that partial or full grounding constituted an actual emergency requiring an immediate termination of the License Agreements and removal of the boat docks.  (Doc. 59) at 2.

concerns, Defendants extended the deadline for removal of the boat docks to August 16, 2013. *Id.* Defendants, however, required Plaintiffs to properly secure the boat docks to ensure that the public could not access the boat docks since the boat docks were safety hazards.[5] *Id.*

On or about August 16, 2013, Defendants extended the boat dock removal deadline to October 31, 2013. *Id.* at 9. Plaintiffs were still required to secure the boat docks as previously instructed. *Id.* at 10.

IV. *Discussion*

    A. *Subject Matter Jurisdiction*

As an initial matter, the Court must address whether the Court has subject matter jurisdiction over Defendants. Defendants argue that Defendants Lopez and Mutz, in their individual capacities, and Defendant EMNRD are not parties to the License Agreements, and thus, should be dismissed from the suit. (Doc. 51) at 15. Defendants also assert that the Court does not have subject matter jurisdiction over Defendant ISC, Defendant EMNRD, and Defendants Lopez and Mutz, in their official capacities, pursuant to *Cunningham v. Univ. of N.M. Bd. of Regents*. 531 Fed. Appx. 909, 915 (10th Cir. 2013) (state entity entitled to Eleventh Amendment immunity from Section 1983 claim regardless of relief sought); (Doc. 66) at 18; (Doc. 67) at 11.

Plaintiffs concede that in keeping with Tenth Circuit precedent, "state entities in and of themselves cannot be defendants in federal court regardless of the relief sought," and therefore, Defendant ISC and Defendant EMNRD "should be dismissed from this action, with the only remaining Defendants being" Defendant Lopez and Defendant Mutz, in their individual and official capacities. (Doc. 71) at 7; *see also* (Doc. 59) at 15. The Court, therefore, finds that

---

[5] On or about June 4, 2013, Defendants instructed Plaintiffs to secure the boat dock by fencing "off the entire dock with orange, plastic barrier/construction fencing" that must "be at least four feet tall." (Doc. 51-3) at 7.

9

based on Plaintiffs' voluntary dismissal of Defendant ISC and Defendant EMNRD from this action, Plaintiffs' claims against Defendant ISC and Defendant EMNRD are dismissed without prejudice.[6]

Plaintiffs also voluntarily dismissed their claims in Count II against Defendant Lopez and Defendant Mutz, in their individual capacities, because they are not parties to the License Agreements. (Doc. 59) at 14. Accordingly, the Court will dismiss Plaintiffs' Count II claims against Defendant Lopez and Defendant Mutz, in their individual capacities, without prejudice. Additionally, the Court finds that the Eleventh Amendment provides Defendant Lopez and Defendant Mutz, in their official capacities, absolute immunity in federal court in a suit "alleging breach of contract under state law," and, thus, the Court will dismiss Plaintiffs' Count II claims against Defendant Lopez and Defendant Mutz, in their official capacities, without prejudice. *Garcia v. Lemaster*, 439 F.3d 1215, 1219 n.7 (10th Cir. 2006) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

Lastly, the Court finds that the Eleventh Amendment bars Plaintiffs' claim for money damages in Count I against Defendant Lopez and Defendant Mutz, in their official capacities, and, accordingly, the Court will dismiss that claim without prejudice. *See Ky. v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment bars federal jurisdiction over state official acting in official capacity in suit for money damages).

In sum, Plaintiffs have a claim under Count I for injunctive relief against Defendant Lopez and Defendant Mutz, in their individual and official capacities, and a claim under Count I for money damages against Defendant Lopez and Defendant Mutz, in their individual capacities.

---

[6] Because the Court is unsure why Plaintiffs decided to dismiss Count II against Defendant ISC, a state agency that waived its immunity when it entered the License Agreements, the Court will dismiss Plaintiffs' claims as to Defendant ISC without prejudice. *See* NMSA 1978, §37-1-23(A) (Repl. Pamp. 1990) ("Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."

### B. *Plaintiffs' New Claims Untimely*

In their response and Cross-Motion for Summary Judgment, Plaintiffs raise new claims that they did not allege in their First Amended Complaint (Doc. 4), filed August 23, 2013. Plaintiffs, in their briefs, contend that they derived property interests from three additional sources: (1) 18.17.3 NMAC; (2) the MOA; and (3) an implied contract based on course of conduct. (Doc. 59) at 5-10; (Doc. 61) at 12-18.[7] Plaintiffs are, in effect, attempting to request to amend the First Amended Complaint to include the aforementioned allegations. *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (inclusion of new allegations in response to motion for summary judgment should be considered a request to amend complaint pursuant to Fed. R. Civ. P. 15). Defendants argue that the Court should disregard Plaintiffs' new theories of property interest because they were not pled or even implied in the First Amended Complaint. The Court agrees with Defendants and denies the request to amend as untimely pursuant to Rule 15(a).

When determining whether a newly raised claim is untimely under Rule 15(a), the Tenth Circuit "focuses primarily on the reasons for the delay." *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006). According to the Tenth Circuit, "denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) (internal quotation and citation omitted). Here, Plaintiffs offer no explanation for their eight month delay in raising their claims as measured from the time they filed the First Amended Complaint to the time they filed the response brief and Cross-Motion for Summary Judgment, and after discovery closed on March 10, 2014. The Court, therefore, denies Plaintiffs' request to amend the First Amended

---

[7] These allegations were not raised in the Complaint (Doc. 1), the First Amended Complaint (Doc. 4), and were not mentioned in the Joint Status Report and Provisional Discovery Plan (Doc. 21), filed October 1, 2013.

Complaint.

    *C. Count I: Plaintiffs Did Not Possess a Constitutionally Protected Property Interest*[8]

Defendants Lopez and Mutz contend that they are entitled to summary judgment on Plaintiffs' procedural due process claim because Plaintiffs cannot establish that the License Agreements created a vested property interest, a necessary element of Plaintiffs' due process claim. Plaintiffs assert that a constitutional violation occurred because the License Agreements created substantive limitations on Defendants' discretion to terminate the License Agreements, thus, creating a property interest.

The Court must apply a two-step inquiry to determine whether Plaintiffs have been deprived of their Fourteenth Amendment right to procedural due process. *Veile v. Martinson*, 258 F.3d 1180, 1185 (10th Cir. 2001). First, the Court must determine whether Plaintiffs "possess[ed] interest such that the due process protections were applicable." *Id.* If Plaintiffs possessed a protected interest, then the Court must next determine whether Plaintiffs were "afforded an appropriate level of process." *Id.* However, if Plaintiffs fail to establish the "threshold legal issue" of the existence of a constitutionally protected property interest in the License Agreements or boat docks, then the Court does not need to inquire any further. *Id.*

"In order for someone to have a property interest in a benefit, he must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1231 (10th Cir. 1990) (quotation marks omitted). "Property interests arise from sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Id.* "In other words, property interests attain constitutional status by virtue of

---

[8] Because the Court concludes that Plaintiffs did not have a constitutionally protected property interest, the Court need not address Defendants' additional arguments supporting summary judgment on Plaintiffs' procedural due process claim, or Plaintiffs' Cross-Motion Summary Judgment arguments pertaining to damages.

the fact that they have been initially recognized and protected by state law." *Veile*, 258 F.3d at 1185 (quotation and alteration marks omitted). "[T]he most common manner in which a state creates a [property] interest is by establishing 'substantive predicates' to govern official decision making, . . . and, further, by mandating the outcome to be reached upon a finding that the relevant criteria had been met." *Ky. Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). Thus, a state has not created a liberty interest "if the decision maker is not required to base its decisions on objective and defined criteria, but instead can deny the requested relief for any constitutionally permissible reason or for no reason at all." *Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012).

Defendant Lopez and Defendant Mutz are entitled to summary judgment on Count I because Plaintiffs have not produced sufficient evidence that New Mexico law recognizes and protects a property interest in licenses, or that there were clearly defined limitations on Defendant Lopez's and Defendant Mutz's discretion to immediately terminate the License Agreements and remove the boat docks. Under New Mexico law, a licensee, generally, has no property interest in a license. *See Tarin's Inc., v. Tinley*, 2000-NMCA-048 ¶ 21, 129 N.M. 185,193 (no property interest exists because a license is, generally, revocable at will and may be revoked without notice or cause). Nonetheless, the fact that the License Agreements were licenses is but only one factor for the Court to consider in determining whether Plaintiffs had a protected property interest. *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1197 (1999). The Court must also look to the parties' mutually explicit understandings, i.e. the terms of the License Agreements.

The License Agreements, viewed in a light most favorable to the existence of a triable issue, demonstrates that Section 2 grants Defendant Lopez, as the Director of ISC, the power to

terminate the License Agreements "*at any time*" if Defendant Lopez and Defendant Mutz, as the Director of EMNRD, conclude that Plaintiffs violated any terms, covenants, or conditions of the License Agreements. Section 10 requires that Plaintiffs maintain the boat docks in a safe and secure condition and the boat docks may not be a threat to public safety. Whether those conditions are violated, is in the "*sole and absolute judgment*" of Defendant Lopez. Reading these two sections together, Section 2 allows Defendant Lopez to terminate the License Agreements and require removal of the boat docks—at any time—if Defendant Lopez determines that the current conditions of the boat docks violates Section 10. The License Agreements, therefore, read as a whole, fail to place any discernible substantive limitations on Defendant Lopez's and Defendant Mutz's discretion in this matter, and, thus, do not create a constitutionally protected property interest. *See Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (2000) (holding that lack of standards to govern defendant's exercise of its discretion precluded a due process claim).

Plaintiffs contend that 18.17.3 NMAC, the MOA, and the parties' course of conduct, read in conjunction with the License Agreements, imposes substantial limitations on Defendant Lopez's and Defendant Mutz's discretion. The Court, as discussed earlier, denied Plaintiffs' attempt to amend the First Amended Complaint to include these new claims. Assuming *arguendo* that the Court granted Plaintiffs' request to include these new claims in a second amended complaint, Plaintiffs' proposition still fails as a matter of law to establish more than Plaintiffs' unilateral expectation of the property interest in the License Agreements.

First, Plaintiffs assert that if they complied with 18.17.3 NMAC, they would have the right to maintain their boat docks for the entire five (5) year term period. Plaintiffs further claim that pursuant to 18.17.3 NMAC, boat docks may only be removed after Plaintiffs have failed to

14

cure any NMAC violations. Plaintiffs, in effect, contend that if they complied with 18.17.3 NMAC, Defendant Lopez and Defendant Mutz could not terminate the License Agreements or remove the boat docks. After a review of 18.17.3 NMAC, Plaintiffs' contention does not follow from the language of 18.17.3 NMAC. The objective of 18.17.3 NMAC "is to provide construction and maintenance standards" for the boat docks. (Doc. 59-1) at 2. The standards provide minimum safety guidelines to maintain the boat docks. *See id.* at 6 (18.17.3.17(C) NMAC (boat docks must meet or exceed standards in 18.17.3 NMAC)). Contrary to Plaintiffs' assertion, 18.17.3 NMAC does not state, explicitly or implicitly, that satisfying the minimum construction and maintenance standards guarantees continual use of the boat docks. Rather, 18.17.3.17(B) NMAC requires Plaintiffs to comply with "*any requirements*" in the License Agreements in addition to the minimum standards in 18.17.3 NMAC. *See id.* (emphasis added). Furthermore, the time to cure violations pertains to 18.17.3 NMAC violations, not violations under the License Agreements. *See id.* (18.17.3.17(D) NMAC). Accordingly, 18.17.3 NMAC does not place substantial limitations on Defendant Lopez's and Defendant Mutz's discretion; Defendant Lopez and Defendant Mutz maintained broad discretion to impose the conditions in the License Agreements.

Second, Plaintiffs argue that the MOA limited Defendant Lopez's and Defendant Mutz's discretion because it states that Plaintiffs must be allowed a time to cure safety or health violations. Plaintiffs' contention, however, is unfounded. The MOA addresses procedures to cure violations in regard to 18.17.3 NMAC, not to violations of the License Agreements. *See* (Doc. 51-2) at 12. Moreover, similar to 18.17.3 NMAC, the MOA states that ISC, thereby Defendant Lopez, may remove the boat docks if Plaintiffs fail to comply with the License Agreements. *See id.* Thus, even incorporating the MOA, Defendant Lopez and Defendant Mutz

had broad discretion to enforce the conditions in the License Agreements because the procedures to cure and remove the boat dock, in themselves, did not create a substantive property right. *See Fed. Lands Legal Consortium*, 195 F.3d at 1199 ("property cannot be defined by the procedures provided for its deprivation") (internal citation and quotation omitted).

Lastly, relying upon *Perry v. Sindermann*, Plaintiffs claim the parties' course of conduct over a ten (10) year period created an implied contract that they would be granted 30 days to cure inspection violations. 408 U.S. 593 (1972). In *Perry*, the Court found that plaintiff, a college professor, had a property interest in reemployment—despite the absence of an explicit contractual tenure provision—if such provision was implied from the words and conduct of the college administration. *Id.* at 601-02. The Court concluded that a claim of entitlement to a benefit was implied from the college's faculty guide, which stated, "the college wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory. . . ." *Id.* at 600. The case at hand is distinguishable from *Perry*. Specifically, the License Agreements are an express contract between the parties that contains explicit provisions addressing termination of the License Agreements, removal of the boat docks, and opportunities to cure 18.17.3 NMAC violations. The Court will not imply a contract by course of conduct "when there is an existing valid express contract embracing the same subject." *Wolfe v. Prairie Oil & Gas Co.*, 83 F.2d 434, 438 (10th Cir. 1936).

Furthermore, a contract must be enforceable to create a constitutionally protected property interest. *Fisher Sand & Gravel, Co. v. Giron*, 465 Fed. Appx. 774, 781 (10th Cir. 2012) (citing *Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1190-91 (10th Cir. 2006)). Pursuant to Section 37-1-23(A), an implied contract is not enforceable against Defendants, and accordingly, Plaintiffs do not have a constitutionally protected property interest

based upon an implied contract. *See* NMSA 1978, §37-1-23(A) (Repl. Pamp. 1990) ("Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."); *see also Fisher Sand & Gravel, Co.*, 465 Fed. Appx. at 781-83 (holding that defendants, in their individual capacities, not liable for alleged due process violation because plaintiff had no property interest in an unenforceable implied contract).

Because Plaintiffs have failed to establish the existence of a constitutionally protected property interest in the License Agreements, Defendant Lopez and Defendant Mutz did not violate Plaintiffs' Fourteenth Amendment rights. Plaintiffs, therefore, have failed to demonstrate a constitutional violation and Defendant Lopez and Defendant Mutz are entitled to summary judgment on Count I with respect to the claim for injunctive relief, in their individual and official capacities, and with respect to the claim for money damages, in their individual capacities. Accordingly, the Court will dismiss those claims with prejudice.

*D. Defendants are Entitled to Attorneys' Fees*

Defendants contend that pursuant to Section 6 of the License Agreements they are entitled to "all attorneys' fees and costs incurred in the defense of this lawsuit." (Doc. 51) at 19. In response, Plaintiffs assert that Defendants are not entitled to attorneys' fees because Defendants did not instigate the litigation to enforce the License Agreements, as required in Section 6 of the License Agreements. (Doc. 59) at 17. Section 6 of the License Agreements states, in relevant part, "Licensee shall further indemnify the Commission for any attorneys' fees incurred in connection with, and/or staff attorney salaries allocable to, any action the Commission takes to enforce this Agreement." (Doc. 51-1) at 4.

In New Mexico, absent statutory authority, court rule, or contractual agreement, "litigants are responsible for their own attorney's fees." *New Mexico Right to Choose/NARAL v. Johnson*,

1999-NMSC-028 ¶ 9, 127 N.M. 654, 657.  Here, the parties have contractually agreed that Plaintiffs will pay attorney fees in connection with "any action" Defendants undertake to enforce the terms and conditions of the License Agreements.  The ordinary or natural meaning of "any" is "every; all."  Webster's Unabridged Dictionary 96 (2d ed. 2001); *see Carmichael v. The Payment Center, Inc.*, 336 F.3d 636, 640 (7th Cir. 2003) (noting that ordinary or natural meaning may be supplied by a dictionary) (citing *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)); *Spingola v. Spingola*, 1978-NMSC-045 ¶ 23, 91 N.M. 737, 743 (looking to dictionary to determine accepted lay meaning of term), *superseded by statute on other grounds*, NMSA 1978, § 40-4-11.1 (Cumm. Supp. 2012).  The License Agreements, by their plain language, establishes Defendants' entitlement to attorneys' fees and costs for *every* action taken by Defendants to enforce the terms of the License Agreements, including termination of the License Agreements and removal of the boat docks.  The Court thus concludes that Defendants are entitled to reasonable attorneys' fees and costs.  Accordingly, Defendants shall have fifteen (15) days to submit an application for attorneys' fees and costs.  Plaintiffs shall have an additional ten (10) days to file any objection to the application.

    IT IS ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 51) is granted;
2. Plaintiffs' Cross-Motion for Summary Judgment (Doc. 61) is denied;
3. Plaintiffs' claim for injunctive relief in Count I of the First Amended Complaint (Doc. 4), filed August 23, 2013, as to Defendant Lopez and Defendant Mutz, in their individual and official capacities, will be dismissed with prejudice;
4. Plaintiffs' claim for money damages in Count I of the First Amended Complaint, as to Defendant Lopez and Defendant Mutz, in their individual capacities, will be dismissed

    with prejudice;

5. all claims in the First Amended Complaint, as to Defendant ISC and Defendant EMNRD will be dismissed without prejudice;

6. all claims in Count II of the First Amended Complaint as to Defendant Lopez and Defendant Mutz will be dismissed without prejudice;

7. the claim in Count I of the First Amended Complaint, which seeks money damages against Defendant Lopez and Defendant Mutz, in their official capacities, will be dismissed without prejudice;

8. Defendants shall submit an application for attorneys' fees and costs within 15 days of the entry of this Memorandum Opinion and Order; and

9. Plaintiffs shall have an additional 10 days to file any objection to the application.

_____
UNITED STATES DISTRICT JUDGE